759 F.2d 1514
 Fed. Sec. L. Rep. P 92,088
Nancy E. DIMENSTIEN, et al., Plaintiffs-Counter Defendant-Appellee,
v.
Arnold D. WHITEMAN, Defendant,
Bear, Stearns & Co., Defendant-Counter Plaintiff-Appellant.
Rhoda A. ABRAMS, Plaintiff-Counter Defendant-Appellee,
v.
Arnold B. WHITEMAN, Defendant,
Bear, Stearns & Company, A Georgia Corporation,
Defendant-Counter Plaintiff- Appellant.
Jane L. KAUFMAN, Plaintiff-Counter Defendant-Appellee,
v.
Arnold B. WHITEMAN, Defendant,
Bear, Stearns & Company, A Georgia Corporation,
Defendant-Counter Plaintiff- Appellant.
 Nos. 84-8369 to 84-8371.
 United States Court of Appeals,
Eleventh Circuit.
 May 8, 1985.
 
 Paul W. Stivers, Atlanta, Ga., for Bear, Stearns & Co.
 Timothy Sweeney, Atlanta, Ga., for Jane L. Kaufman.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before KRAVITCH and CLARK, Circuit Judges, and PECK*, Senior Circuit Judge.
 JOHN W. PECK, Senior Circuit Judge:
 
 
 1
 These three consolidated actions involve essentially the same underlying issue.[1] In each case, Bear, Stearns & Company ("Bear Stearns") appeals from the denial of a motion to stay federal judicial proceedings pending arbitration of pendent arbitrable claims. This court has jurisdiction because the denial of the stay is an interlocutory order refusing an injunction under 28 U.S.C. Sec. 1292(a)(1). Byrd v. Dean Witter, 726 F.2d 552, 553 (9th Cir.1984), rev'd on other grounds, --- U.S. ----, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).
 
 
 2
 In each action, Appellees filed a complaint in October 1983, in the United States District Court for the Northern District of Georgia, alleging that they had signed a "trading authorization" giving Bear Stearns complete control of their investment accounts, including the power to trade the accounts on a discretionary basis; that defendant Arnold D. Whiteman, a Bear Stearns employee, concentrated all of their investments in a single, high-risk speculative stock and, as a result, the value of their respective accounts declined considerably. Appellees alleged that Bear Stearns and Whiteman were liable in damages for violations of the Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organizations statute ("RICO"), breach of fiduciary duty, fraud, and the Georgia Fair Business Act of 1975. Appellee Morton Dimenstien, as a trustee of a profit sharing plan and pension fund, also filed claims under Sec. 409 of the Employees' Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1109.
 
 
 3
 The written agreement with Bear Stearns, entered into by each Appellee, provided for arbitration of any controversy arising out of or relating to the investment account transactions, upon timely election of arbitration. The agreement also provided:
 
 
 4
 It is understood that this agreement to arbitrate does not constitute a waiver of the right to a judicial forum where such waiver would be void under the securities laws and specifically does not prohibit me from pursuing any claim or claims arising under the federal laws in any court of competent jurisdiction.
 
 
 5
 Pursuant to the agreement, Bear Stearns filed a timely demand for arbitration of the arbitrable claims. Bear Stearns conceded that the federal Securities Exchange Act claims were not subject to arbitration, but asserted that all other claims were arbitrable.[2] In response, Appellees moved to stay arbitration proceedings during the pendency of the federal court action. Bear Stearns then moved to stay the federal proceedings pending arbitration of the arbitrable claims.
 
 
 6
 At the time of the proceedings before the district court, the Eleventh Circuit followed the "intertwining" doctrine, a judicially created exception to the command of Section 3 of the Federal Arbitration Act, 9 U.S.C. Secs. 1-14 ("Act" or "Arbitration Act").[3] Under the intertwining approach, "when it is impractical if not impossible to separate out non-arbitrable federal securities law claims from arbitrable contract claims, a court should deny arbitration in order to preserve its exclusive jurisdiction over the federal securities act claims." Sibley v. Tandy Corp., 543 F.2d 540, 541 (5th Cir.1976), cert. denied, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); accord, Belke v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 693 F.2d 1023, 1025 (11th Cir.1982). The district court held that the facts of the instant cases required the application of the intertwining doctrine and, accordingly, denied Bear Stearns' motion for a stay of proceedings pending arbitration.
 
 
 7
 On appeal, Bear Stearns does not pursue the argument that the federal securities law claims are not intertwined with the RICO, ERISA and state claims. Rather, Bear Stearns contends that application of the intertwining doctrine results in nullification of the arbitration agreement, in violation of the Arbitration Act. Bear Stearns suggests that this court can preserve the full authority of the district court to decide the nonarbitrable federal issues without any collateral estoppel consequences from a prior arbitration by controlling the order of the two proceedings. Under Bear Stearns' suggested approach, the court would stay arbitration pending resolution of the nonarbitrable claims. At oral argument, we focused on the question of whether Bear Stearns had requested "ordering" by the district court. Our concern was brought about by the recent Eleventh Circuit opinion of Raiford v. Buslease, 745 F.2d 1419 (11th Cir.1984), in which the same contention, advanced by Merrill Lynch, was rejected because Merrill Lynch had not requested ordering by the district court. Subsequent to oral argument, the United States Supreme Court announced an opinion which causes us to shift the focus of our inquiry. Dean Witter Reynolds, Inc. v. Byrd, --- U.S. ----, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). As explained below, even if we found that Bear Stearns failed to request ordering before the district court, the holding of Dean Witter prevents us from affirming the district court's application of the intertwining doctrine.
 
 
 8
 In Dean Witter the issue was whether, "when a complaint raises both federal securities claims and pendent state claims, a Federal District Court may deny a motion to compel arbitration of the state-law claims despite the parties' agreement to arbitrate their disputes." Id., --- U.S. at ----, 105 S.Ct. at 1238. In that action, Dean Witter had "filed a motion for an order severing the pendent state claims, compelling their arbitration, and staying arbitration of those claims pending resolution of the federal court action." Id., at ----, 105 S.Ct. at 1239. Dean Witter argued that the Arbitration Act compelled arbitration of the state law claims. The district court denied the motion and the Ninth Circuit affirmed. 726 F.2d 552 (1984). The Supreme Court noted that the Ninth, Fifth and Eleventh Circuits, when faced with the issue, have followed the intertwining doctrine. In contrast, the Court continued, the Sixth, Seventh and Eighth Circuits have held that the Arbitration Act requires courts to compel arbitration of arbitrable claims when asked to do so. The Supreme Court adopted the latter view and, accordingly, reversed the decision not to compel arbitration. Thus, the Supreme Court has effectively rendered the intertwining doctrine invalid.
 
 
 9
 The Supreme Court looked to the legislative history of the Arbitration Act and concluded, based upon the Congressional intent of ensuring judicial enforcement of private arbitration agreements, that "a court must compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made." Dean Witter, supra, at ----, 105 S.Ct. at 1242. The Court stated that those Circuits which have followed the intertwining or ordering approaches have reasoned that either stay of arbitration proceedings or joined proceedings is necessary to avoid the collateral estoppel effect of prior arbitration proceedings upon subsequent federal judicial proceedings. The Supreme Court, in a well-reasoned analysis, explained why arbitration proceedings will not necessarily have a preclusive effect on subsequent federal court proceedings. The Court cited McDonald v. City of West Branch, 466 U.S. ----, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), in which it held that "neither the full faith and credit provision of 28 U.S.C. Sec. 1738, nor a judicially fashioned rule of preclusion, permit a federal court to accord res judicata or collateral estoppel effect to an unappealed arbitration award in a case brought under 42 U.S.C. Sec. 1983." Dean Witter, supra, --- U.S. at ----, 105 S.Ct. at 1243. The Court stated that because the collateral estoppel effect of an arbitration proceeding is at issue only after arbitration is completed, the issue of whether the McDonald analysis encompassed Dean Witter was not before it. While declining to decide what, if any, preclusive effect the arbitration proceedings might have, the Court said:
 
 
 10
 there is no reason to require that district courts decline to compel arbitration, or manipulate the ordering of the resulting bifurcated proceedings, simply to avoid an infringement of federal interests.
 
 
 11
 Id., at ----, 105 S.Ct. at 1244.
 
 
 12
 In light of Dean Witter, we find it unnecessary to determine whether Bear Stearns requested the district court to order the proceedings. Although the Supreme Court does not specifically reject manipulation of the order of proceeding, the language of Dean Witter strongly suggests that ordering is not the better approach to resolution of the issue before us. We find language in Justice White's concurring opinion which accurately expresses our view:
 
 
 13
 The Court's opinion makes clear that a District Court should not stay arbitration, or refuse to compel it at all, for fear of its preclusive effect. And I can perceive few, if any, other possible reasons for staying the arbitration pending the outcome of the lawsuit. Belated enforcement of the arbitration clause, though a less substantial interference than a refusal to enforce it at all, nonetheless significantly disappoints the expectations of the parties and frustrates the clear purpose of their agreement. In addition, once it is decided that the two proceedings are to go forward independently, the concern for speedy resolution suggests that neither should be delayed.
 
 
 14
 Id., at ----, 105 S.Ct. at 1239 (White, J., concurring).
 
 
 15
 Accordingly, we REVERSE the district court's denial of Bear Stearns' motion to stay proceedings pending arbitration and REMAND for further proceedings in light of Dean Witter and consistent with this opinion.[4]
 
 
 
 *
 Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 The briefs in each of the three cases are essentially identical, the same counsel are involved in each action, and the district court opinions in each case are the same
 
 
 [2]
 Because Bear Stearns did not seek to compel arbitration of the federal securities claims, the question of whether such claims can be the subject of arbitration is not before us. See Dean Witter Reynolds v. Byrd, --- U.S. ----, n. 1, 105 S.Ct. 1238, n. 1, 84 L.Ed.2d 158 (1985)
 
 
 [3]
 Section 3 of the Federal Arbitration Act, 9 U.S.C. Secs. 1-14, provides:
 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
 
 
 [4]
 Because the district court held that the facts of these cases supported application of the intertwining doctrine, it did not clearly distinguish the arbitrable from the nonarbitrable claims. The court did state that the claims asserted under federal securities law are not subject to arbitration; however, as noted supra, Bear Stearns had conceded this point. In dispute is whether Appellees' RICO and ERISA claims are arbitrable. Since the district court did not rule upon this issue, the initial determination must be made by the district court upon remand