Mary **BENOAY**, Plaintiff-Appellee, Cross-Appellant,

v.

**PRUDENTIAL–BACHE SECURITIES, INC.,** a/k/a Bache Halsey Stuart Shields, Alan Stark, Defendants-Appellants. Cross-Appellees.

**E.F. Hutton & Company, Inc.,** Defendant.

No. 85–5877.

United States Court of Appeals, Eleventh Circuit.

Dec. 15, 1986.

Kathy M. Klock, Fowler, White, Burnett, Hurley, Banick & Strickroot, Miami, Fla., for defendants-appellants.

Russell L. Forkey, P.A., Pamela M. Burdick, Layne Verebay, Fort Lauderdale, Fla., for plaintiff-appellee.

Before FAY and JOHNSON, Circuit Judges, and HOFFMAN *, Senior District Judge.

PER CURIAM:

This case involves the arbitrability of federal and state claims arising from certain securities transactions. The United States District Court for the Southern District of Florida granted a motion to compel arbitration of state law claims, denied the same motion with respect to the federal securities claims, and stayed the federal claims pending the final report of the arbitration. For the reasons that follow, we affirm the decision of the district court denying arbitration of the federal claims, vacate the ruling of the district court staying the federal claims, and reverse and remand the order compelling arbitration of the state law claims.

### BACKGROUND

Mary Benoay (hereinafter Benoay) is a resident of the State of Florida. In January of 1979, Benoay became widowed after thirty years of marriage. Some time thereafter, Benoay sought the investment advice of Florida resident Alan Stark (hereinafter Stark). At the time, Stark was a registered representative of E.F. Hutton & Co. (hereinafter E.F. Hutton), a national stock brokerage firm.

Upon the recommendations of Stark, Benoay opened an account with E.F. Hutton in October of 1980. This account remained active for approximately six months. In April of 1981, Stark severed his ties with E.F. Hutton and transferred Benoay's account to Prudential-Bache Securities (hereinafter Bache), Stark's new employer.

When Benoay's account was transferred to Bache, several documents were executed. Benoay purportedly signed a customer account agreement containing the following provision:

> Any controversy arising out of or relating to my account, to transactions with

---

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

or for me or to this Agreement or the breach thereof, ... shall be settled by arbitration in accordance with the rules then obtaining of either the American Arbitration Association or the Board of Governors of the New York Stock Exchange as I may elect.

The effect of this arbitration agreement came into question when a controversy relating to Benoay's account arose after the account was closed in February of 1982.

Through a complaint filed November 5, 1982 and amended February 28, 1983, Benoay brought an action against Stark, E.F. Hutton and Bache alleging fraudulent trading of unidentified securities. The first four counts, alleging (1) misrepresentations and omissions in violation of Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2) (1982), (2) churning[1] in violation of Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), (3) misrepresentations and omissions in violation of Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), and (4) common law breach of fiduciary, were brought against defendants Stark and E.F. Hutton for losses allegedly suffered prior to April, 1981, when Benoay was associated with E.F. Hutton. The last four counts alleged identical claims against Stark and Bache for losses suffered after April, 1981 when Benoay's account was transferred to Bache.

Approximately two and one-half months after the United States Supreme Court announced its decision allowing arbitration of state claims in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), defendants Bache and Stark made a motion to compel arbitration of Benoay's claims. Benoay resisted this motion and raised the issues of (1) waiver of arbitration, (2) the arbitrability of 10(b) claims, and (3) the invalidity of the arbitration agreement due to adhesion, unconscionability, the waiver of judicial remedies without Benoay's knowledge, and the lack of mutuality of obligation. In an order filed September 18, 1985, the district court granted the motion to compel arbitration of the breach of fiduciary claims against all three defendants, denied the motion to compel arbitration of the claims made under the 1933 and 1934 Securities Acts, and stayed the federal claims pending the final report of the arbitration proceeding.

Notice of appeal was filed by Benoay on October 9, 1985. Bache and Stark appealed the district court's denial of their motion to compel arbitration of Benoay's claims alleged under Section 10(b) of the 1934 Act. Benoay cross-appealed, renewing the waiver of arbitration and validity of the arbitration provisions issues. In addition, Benoay challenged the portions of the district court's order directing arbitration of the claims against E.F. Hutton and staying the non-arbitrable federal claims.

## I. ARBITRATION OF FEDERAL SECURITIES CLAIMS

■ This court has jurisdiction under 28 U.S.C. § 1292(a)(1) (1982) to review a district court order compelling arbitration. *Miller v. Drexel Burnham Lambert, Inc.,* 791 F.2d 850, 853 (11th Cir.1986). Bache and Stark argue that Benoay's claims under Section 10(b) of the Securities Exchange Act of 1934 are arbitrable. The district court correctly found to the contrary. The law is clear in this circuit that pre-claim agreements to arbitrate claims brought under Section 10(b) of the Securities Exchange Act of 1934 are not enforceable. *Wolf v. E.F. Hutton & Co.,* 800 F.2d 1032, 1033 (11th Cir.1986) (en banc).

## II. WAIVER OF ARBITRATION

Benoay claims that Bache and Stark waived any right to arbitrate by failing to request such action for approximately two and one-half years after litigation had commenced. Specifically, Benoay alleges that

---

**1.** "Churning" has been defined as "[t]he buying and selling of securities by a broker for a customer's account, without regard to the customer's investment interests, for the purpose of generating commissions." *McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d 888, 890 n. 1 (5th Cir.1979).

(1) she has been unduly prejudiced by extensive judicial discovery revealing information to which the defendants would not have been privy in arbitration, and (2) defendants are barred from compelling arbitration because their request did not satisfy the requirements of the most closely analogous Florida statute of limitations.[2] The district court did not address the merits of this issue.

 The right to arbitrate can be waived. *See Miller*, 791 F.2d at 853. Nevertheless, when a claim is not arbitrable at the time an action is commenced and a timely request has been made, mere participation in discovery does not cause prejudice sufficient to constitute a waiver. *See e.g., Miller*, 791 F.2d at 853–54; *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir.1982). Despite the fact that Bache and Stark's motion to compel arbitration was made two and one-half years after initiation of the civil action, we conclude that the motion was timely in light of a change in law affecting the parties' rights.

In this case, as in *Miller*, the complaint alleges "federal and common law claims based on a common nucleus of operative facts." *Miller*, 791 F.2d at 854. At the time this suit was commenced, the law of this circuit prohibited arbitration of otherwise arbitrable state claims when arbitrable and nonarbitrable claims were "inextricably intertwined." *Belke*, 693 F.2d at 1026; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1172–73 (11th Cir.1982).[3] Thus, until the Supreme Court handed down its decision in *Byrd*, 470 U.S. 213, 105 S.Ct. 1238, Bache and Stark could not have obtained an order compelling arbitration. As the court in *Miller* acknowledged, "[t]his circuit does not require a litigant to engage in futile

gestures merely to avoid a claim of waiver." *Miller*, 791 F.2d at 854.

In *Byrd*, the Supreme Court rejected the intertwining doctrine and ruled that "the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Byrd*, 470 U.S. at 217, 105 S.Ct. at 1241. Therefore, any right to arbitrate the state law claims which Bache and Stark acquired did not accrue until March 4, 1985—the day *Byrd* was decided. *Miller*, 791 F.2d at 854; *see Byrd*, 470 U.S. at 213, 105 S.Ct. at 1238. Thus, Bache and Stark's motion to compel arbitration was made approximately ten weeks after their right to arbitrate accrued. No discovery took place during that period. A demand after an identical ten-week period was found to be timely in *Miller*. *Miller*, 791 F.2d at 824. Such a delay is well within the one-year statute of limitations for specific performance alleged to be the most analogous. Accordingly, we find no waiver of the right to arbitrate.

## III. ARBITRATION OF THE STATE LAW CLAIMS

Benoay argues that the district court erred in compelling arbitration of the state law claims because (1) no arbitration agreement existed between Benoay and E.F. Hutton and (2) the court failed to consider the issues of adhesion, unconscionability, waiver of judicial remedies without notice, and the lack of mutuality of obligation. We agree.

 A court may not order arbitration unless and "until it is satisfied that a valid arbitration agreement exists." *Miller*, 791 F.2d at 854. In this case, the record is devoid of any evidence suggesting the existence of an agreement between Benoay,

---

2. Benoay claims that the most analogous Florida statute of limitations is Fla.Stat.Ann. § 95.-11(5)(a) (West 1982) which states:

 95.11 Actions other than for recovery of real property shall be commenced as follows:
 (5) within one year—.

 (a) an action for specific performance of a contract.

3. The intertwining doctrine, adopted by this circuit in *Belke* and *Haydu*, has been rejected by the Supreme Court in *Byrd*. *See Byrd*, 470 U.S. at 216–17, 105 S.Ct. at 1240–41.

E.H. Hutton and Stark authorizing the arbitration of claims arising from the time that Benoay's account was domiciled at E.F. Hutton. Thus, it appears that the district court's order compelling arbitration of the breach of fiduciary claim against E.F. Hutton and Stark while employed by E.F. Hutton is an oversight which requires reversal.

 With respect to the breach of fiduciary claim against Bache and Stark while Benoay's account was domiciled with Bache, the district court's order compelling arbitration contains no indication that the court addressed the issues raised by Benoay questioning the validity of the arbitration agreement between Benoay and Bache. This court will not review the validity of an arbitration agreement where there are only "generalized assertions of unequal bargaining power and fundamental unfairness." *Miller*, 791 F.2d at 854. We therefore remand this case to the district court to conduct a more thorough exploration of the validity of the arbitration issue. If, after evaluating the nature and sufficiency of the allegations, the district court concludes that Benoay has alleged fraud, duress or unconscionability with respect to the arbitration clause itself, then judicial consideration of these issues is mandated before arbitration of the state claims can be compelled. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967); *Miller*, 791 F.2d at 854. If, on the other hand, Benoay's claims of adhesion, unconscionability, waiver of judicial remedies without knowledge, and lack of mutuality of obligation pertain to the contract as a whole, and not to the arbitration provision alone, then these issues should be resolved in arbitration. *See Prima Paint*, 388 U.S. at 404, 87 S.Ct. at 1806; *Miller*, 791 F.2d at 854.

## IV. THE ORDER STAYING JUDICIAL RESOLUTION OF THE FEDERAL SECURITIES CLAIMS

 Benoay argues that the district court erred in staying the federal claims pending the resolution of arbitration proceedings. The district court, in its order compelling arbitration of the state law claims, justified the stay as a procedure intended to "result in avoidance of duplication of judicial effort by the litigants." Although some uncertainty exists regarding the circumstances, if any, under which a district court may order proceedings through the use of a stay,[4] it is clear that the district court's justification for the stay in this case is insufficient. The Supreme Court in *Byrd* indicated that judicial economy is not an overriding concern when arbitration is at issue. *See Byrd*, 470 U.S. at 217, 105 S.Ct. at 1241. The Court ruled that a stay is not "necessary to protect the federal interest in the federal-court proceeding." *Byrd*, 470 U.S. at 222, 105 S.Ct. at 1243. This court, when faced with opposing motions to stay federal and state claims has determined that the "better approach" is to deny motions for a stay and allow all the proceedings to go forward without delay. *Dimenstien v. Whiteman*, 759 F.2d 1514, 1517 (11th Cir.1985). Accordingly, the portion of the district court's order staying the resolution of Benoay's federal securities claims is vacated.

AFFIRMED in part, REVERSED in part and REMANDED.

---

4. *See Dimenstien v. Whiteman,* 759 F.2d 1514, 1517 (11th Cir.1985).