**ADMINISTRATIVE MANAGEMENT SERVICES, LTD., INC.,** Plaintiff-Appellee,

v.

**ROYAL AMERICAN MANAGERS, INC., et al., Defendants,**

**The Omaha Indemnity Company, a corporation, Defendant-Appellant.**

No. 87–5573.

United States Court of Appeals, Eleventh Circuit.

Sept. 14, 1988.

---

ing its motion to compel arbitration under § 4 of the Arbitration Act, 9 U.S.C. § 4. The parties to a retrocessional reinsurance agreement disagree whether the arbitration provision of the contract obligates them to tripartite arbitration of their disputes. We need not address this issue since we find that this court lacks jurisdiction to consider this appeal.

## I

In this diversity action, Administrative Management Services Syndicate, Ltd., Inc. ("AMS"), is suing Omaha Indemnity Company ("OI") and Royal American Managers, Inc. ("RAM") for breach of contract and fraud, among other claims.[1] In 1983, OI and RAM entered a Management Agreement, whereby RAM agreed to underwrite and manage reinsurance business in OI's name. OI, RAM and AMS entered into a retrocessional reinsurance agreement wherein a portion of the risks accepted by RAM in OI's name pursuant to the Management Agreement were to be retroceded to AMS. OI was the reinsured, and AMS was the reinsurer. This reinsurance contract was to take effect at the same time as the Management Agreement. Subsequently, OI revoked RAM's authority to accept reinsurance business for it, but did not notify AMS of this change. As a result, OI allegedly underreported to AMS the volume of business that was ceded to AMS. In December of 1985, AMS ostensibly learned for the first time that RAM had written business in OI's name that exceeded AMS' maximum capacity to insure. The significant underwriting losses that resulted to AMS alerted the relevant Florida State authorities to order AMS to discontinue writing all insurance business.

On February 21, 1986, AMS began its suit against RAM on the reinsurance contract claims in the United States District Court for the Southern District of Florida. AMS later added as defendants OI, and two

Robert M. Brochin, Nancy A. Copperthwaite, Morgan, Lewis & Bockius, Miami, Fla., Francis M. Gregory, Jr., David T. Shelledy, Sutherland, Asbill & Brennan, Washington, D.C., J.D. Fleming, Jr., John W. Bonds, Jr., Sutherland, Asbill & Brennan, Atlanta, Ga., for defendant-appellant.

Stearns, Weaver Miller, Weissler, Alhadeff & Sitterson, P.A., Eugene E. Stearns, Miami, Fla., for Administrative.

Ursula Mancusi-Ungaro, Sparber, Shevin, Shapo, Hailbronner & Book, P.A., Thomasina H. Williams, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, Fla., for Royal, Wining and Shonacher.

Before JOHNSON and HATCHETT, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge:

The appellant, Omaha Indemnity Company, appeals the district court's order deny-

---

\* The Honorable Jesse E. Eschbach, Senior Circuit Judge of the United States Court of Appeals for the Seventh Circuit, is sitting by designation.

1. In its amended complaint, AMS seeks rescission, and charges the defendants with fraudulent inducement, fraud, breach of contract, violations of the RICO Act (18 U.S.C. § 1961 *et seq.*), violations of the Florida RICO Act (FLA. STAT.ANN. ch. 895 (West 1988)), and conspiracy to defraud.

individuals, James R. Wining and Willie A. Schonacher, Jr. Wining and Schonacher were RAM's principals who negotiated the reinsurance contract. On April 3, 1986, OI began its suit against RAM, AMS, Wining and Schonacher for injunctive relief and damages in federal district court in Missouri. RAM and OI have subsequently agreed to arbitrate their differences pursuant to their Management Agreement. OI's complaint against RAM has been stayed in the federal district court in Missouri pending the arbitration hearing, although the discovery in that case has not been stayed.

OI requested AMS and RAM to submit to arbitration pursuant to the arbitration provision of the reinsurance contract. When AMS refused, OI petitioned the federal district court in Florida under § 4 of the Arbitration Act to compel arbitration against AMS and RAM.[2] The district court denied OI's motion because it found the arbitration provision void for lack of consideration and for indefiniteness. Although the arbitration provision is ambiguous as to which parties are covered by it, the court concluded that RAM was a party to both the reinsurance agreement and to the arbitration clause contained therein. Because the parties were not able to agree on one interpretation of the arbitration provision, the court was not able to reform the provision consistent with the parties' intent.

OI appeals the district court's denial of its motion to compel arbitration against AMS.[3] AMS contends that we lack jurisdiction to consider this appeal. After oral argument, we requested both parties to submit supplemental briefs on the question of our jurisdiction. Omaha Indemnity alleges that we have jurisdiction in this action because it is appealable as a final order under 28 U.S.C. § 1291, or as an exception to § 1291 under the collateral-order doctrine, or as an interlocutory order

under 28 U.S.C. § 1292. We conclude otherwise, and now dismiss this appeal for lack of jurisdiction.

## II

■ In support of its allegations that this Court has jurisdiction under § 1291, OI contends that its petition to compel arbitration was an independent action because it was originally filed in a federal district court in Nebraska before it was transferred to the federal district court in Florida. OI thus seeks to characterize its petition as an "offensive" motion, rather than as a "defensive" motion filed in a pending suit. Although OI's characterization of its motion may be questionable, the distinction OI seeks to draw is irrelevant to our analysis. The dispositive factor in this case is whether all of the claims are included in OI's § 4 motion. Since not only some of the claims, but also some of the parties, are not included in OI's motion, this Court cannot assert appellate jurisdiction here without contravening the very policy behind § 1291.

The overarching concern behind § 1291 is to avoid piecemeal litigation of claims. As the Supreme Court noted long ago:

> From the very foundation of our judicial system the object and policy of the acts of congress in relation to appeals and writs of error ... have been to save the expense and delays of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal.

*McLish v. Roff*, 141 U.S. 661, 665–66, 12 S.Ct. 118, 120, 35 L.Ed. 893 (1891). Most recently, the Supreme Court has reiterated that "as a general rule a district court's decision is appealable under this section only when the decision 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"

---

**2.** OI originally filed its petition to compel arbitration in federal district court in Nebraska because the reinsurance agreement was entered into in Omaha, Nebraska, and the agreement specified that Omaha would be the site of the arbitration. All three parties consented to pursue the petition in the federal district court in Florida, and that district court determined that it had jurisdiction to consider this petition ac-

cording to the governing law of our Circuit. As a result, OI's petition was transferred to the district court in Florida.

**3.** OI does not appeal the district court's refusal to order RAM to arbitrate, since OI and RAM are already arbitrating their disputes pursuant to their Management Agreement.

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*, —U.S. ——, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)).

Our past decisions are consistent with this principle against piecemeal litigation. From the text of past opinions in which we have asserted § 1291 jurisdiction, it is readily ascertainable that *all* of the claims in the underlying action were included in the § 4 motion. In *Seaboard Coast Line R.R. Co. v. Trailer Train Co.*, 690 F.2d 1343 (11th Cir.1982), we asserted jurisdiction over a district court order denying arbitration. *Id.* at 1344–45 n. 1. The plaintiff had sued the Trailer Train Company for breach of contract in failing to provide the plaintiff with documents it needed to support its claim for an investment tax credit. In the same complaint, the plaintiff requested the district court to stay the suit and compel arbitration, which the district court denied. The motion to compel arbitration encompassed the very claim before the court, such that all of the underlying claims were included.

In *La Nacional Platanera v. North American Fruit & Steamship Corp.*, 84 F.2d 881 (5th Cir.1936), the former Fifth Circuit[4] found § 1291 jurisdiction over an order denying a § 4 motion. In *La Nacional Platanera*, the plaintiff sued in state court for losses that it incurred as a result of an alleged breach of a charter party contract. The defendant removed the action to federal district court. After the plaintiff's motion to remand the action to state court was denied, the plaintiff petitioned for an order to compel arbitration, which the district court also denied. The Fifth Circuit characterized this action as a "suit at law" rather than one in admiralty,[5] and found the district court's order to be "a final judgment and appealable." *Id.* at 882. From the text of this opinion, which describes this action as one for damages resulting from breach of contract and only refers to this single issue throughout the opinion, it is evident that the § 4 motion covers this precise claim. Thus, we can reasonably assume that all of the plaintiff's claims in the underlying suit were included in the motion to compel arbitration.[6]

In *Naples v. Prepakt Concrete Co.*, 494 F.2d 511 (5th Cir.), *cert. denied*, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974), the

---

4. Decisions rendered by the former Fifth Circuit prior to October 1, 1981, are binding on this Court. *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc).

5. The Fifth Circuit noted that if the suit had been brought in admiralty, the district court's order "would have to be treated as interlocutory and non-appealable." 84 F.2d at 882. *See Schoenamsgruber v. Hamburg American Line*, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989 (1935) (holding that when a district court is sitting in admiralty, its order granting arbitration and staying litigation is considered to be interlocutory and not appealable under § 1291). *See also State Establishment for Agric. Prod. Trading v. M/V Wesermunde*, 770 F.2d 987, 989 (11th Cir.1985) (applying *Schoenamsgruber* in admiralty case).

6. In *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 732 F.2d 444, 445 (5th Cir.1984), the reorganized Fifth Circuit mischaracterized *La Nacional* as a case where § 1292(a)(1) jurisdiction was asserted under the *Enelow–Ettelson* doctrine. (*See infra* Part IV for a discussion of *Enelow–Ettelson*.) Such an interpretation contradicts the very text of *La Nacional*. In *La Nacional*, the former Fifth Circuit stated: "Had the petition for arbitration been filed by defendant, an order denying that right would have

been appealable under the ruling in *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 [1935]." 84 F.2d at 882. In *Shanferoke*, the Supreme Court applied the now defunct *Enelow* doctrine, which was decided on the same day as *Shanferoke*, to find jurisdiction. Because *La Nacional* did not involve a petition for arbitration which was initiated as an equitable defense to an action at law, that case did not satisfy the prerequisites for application of the *Enelow–Ettelson* doctrine. Thus, the Fifth Circuit's opinion in *La Nacional* clearly indicates that *Enelow* was not applicable. Rather, jurisdiction was asserted under § 1291. Moreover, our Court has construed *La Nacional* as a situation where § 1291 applied. *See Seaboard Coast Line*, 690 F.2d at 1344–45 n. 1 (citing *La Nacional* for the proposition that "denial of a motion to compel arbitration is 'a final judgment and appealable'"). *See also Naples*, 494 F.2d 511, 512–13 (5th Cir.), *cert. denied*, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974) (where the former Fifth Circuit cites *La Nacional* to state that "an order denying a § 4 petition to compel arbitration, entered in a suit at law claiming damages for breach of contract, was a final judgment and appealable").

former Fifth Circuit again asserted § 1291 jurisdiction, this time over an order granting a motion to compel arbitration. When a dispute arose between the parties, the City of Naples sued Prepakt and Prepakt's surety in Florida state court. Prepakt removed the case to federal district court in Florida. The district court granted Prepakt's motion to stay the City's suit and to compel arbitration. The arbitration took place in Cleveland, and Prepakt was awarded $90,000 as a result of the proceedings. When Prepakt petitioned the federal district court in Ohio to enforce the award, the City of Naples secured an injunction in the federal district court in Florida to enjoin further proceedings in any other federal district court. Prepakt appealed the injunction. From the facts outlined in the original opinion promulgated by the Fifth Circuit, 490 F.2d 182 (5th Cir.1974), as well as the synopsis contained in that court's denial of the plaintiff's petition for rehearing, 494 F.2d 511, it is not clear whether all of the claims in the underlying action were included in the § 4 motion. However, our Court in *Miller v. Drexel Burnham Lambert, Inc.*, 791 F.2d 850 (11th Cir.1986), characterized *Naples* as an action where all of the claims were directed to arbitration by the § 4 motion. *Id.* at 852. Moreover, the Fifth Circuit in *Naples* pointed out that the plaintiff's claim against the defendant's surety was contingent on Prepakt's liability, and was thus extinguished at the same time as Prepakt's liability. 490 F.2d at 184. Therefore, we can reasonably infer that the § 4 motion and the resulting arbitration disposed of all the underlying claims against all of the parties.

This Court has recently affirmed its stance that where all claims are not included in the motion to compel arbitration, this Court lacks appellate jurisdiction. In *Miller v. Drexel Burnham Lambert, Inc.*, we stated that "[c]ertain orders compelling arbitration are indeed final under 28 U.S.C. § 1291 because they completely dispose of *all* issues before the district court." 791 F.2d at 852 (per curiam) (emphasis added). We refused to assert jurisdiction over a district court order granting a § 4 motion to compel arbitration because "no order

compelling arbitration could dispose of all the claims." *Id.* at 852. The plaintiff in *Miller* sued his broker and the broker's employer for violating the 1933 and 1934 Securities Acts, and for breach of fiduciary duty. Pursuant to the parties' brokerage agreements, the defendants petitioned to compel arbitration and to stay judicial proceedings pending arbitration. The district court granted the motion on the 1934 Act and fiduciary duty claims. Upon appellate review, a panel of our Court found that it lacked § 1291 jurisdiction because the plaintiff's claim under the 1933 Securities Act was not arbitrable under *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). (We subsequently granted jurisdiction under § 1292(a)(1) pursuant to the now defunct *Enelow-Ettelson* doctrine, recently overruled by *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, —U.S. at —, 108 S.Ct. at 1142. See our discussion in *infra* Part IV.)

In the latter part of our analysis in *Miller*, we concluded that the plaintiff's 1934 Securities Exchange Act claim was also not arbitrable. 791 F.2d at 854. We note that since our *Miller* decision, the Supreme Court has determined that claims involving the Securities Exchange Act of 1934 may be arbitrable. *See Shearson/American Express, Inc. v. McMahon*, —U.S. —, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Extrapolating from the Supreme Court's reasoning in *Shearson/American Express*, the Fifth Circuit has most recently concluded that claims arising under § 12(2) of the Securities Act of 1933 may be subject to predispute arbitration agreements, *see Rodriguez de Quijas v. Shearson/Lehman Brothers, Inc.*, 845 F.2d 1296 (5th Cir.1988), even though the Supreme Court has yet to expressly overrule its contrary holding as to the 1933 Act in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). Nonetheless, the determination of what types of claims may now be subject to arbitration does not affect our analysis. *Miller* establishes that as long as some claims are not covered in the § 4 motion, § 1291 jurisdiction cannot be asserted.

In *Miller*, as in the cases preceding it,[7] this Court has been guided by the concern that if some claims remain to be resolved in litigation even if a motion to compel arbitration were granted, judicial resources would be wasted because the parties would have to return to court. This Court has reasonably assumed that when all of the claims are disposed of in the motion to compel arbitration, the dispute between the parties would terminate at the conclusion of the arbitration proceedings. Clearly, no such assumption is permissible when some of the claims are not included in the motion to compel. Even after arbitration, the court would have to proceed on the issues not covered by the motion.

Although *Miller* involved an order to compel arbitration, its reasoning applies to orders denying arbitration. If this court were to assert jurisdiction of a district court order denying a motion to compel arbitration, where the motion does not cover all of the claims before the court, litigation would be protracted unnecessarily. If we overturned the order and required the parties to arbitrate their differences, the parties would still have to return to court to litigate the claims not covered by the § 4 motion. However, if we affirmed the denial, the parties would have incurred needless additional expense and delay. Such concerns are particularly accentuated because of the inherent futility of reviewing an order where some of the claims still remain to be litigated.

The situation before us presents a stronger argument against asserting § 1291 jurisdiction than *Miller* did. Not only are some claims in the underlying action not included in the motion, but not all of the parties are covered by the motion to compel arbitration. The disputed arbitration provision does not include AMS' claims against the defendants Wining and Schonacher, the individual defendants.[8] If we accepted jurisdiction in this case, we would most certainly eviscerate the very policy behind § 1291.[9]

### III

▆▆▆ Omaha Indemnity raises the alternative argument that this Court may have jurisdiction under the collateral-order exception to the finality requirement of § 1291. In *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Supreme Court stated that a district court's decision is appealable if it "finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546, 69 S.Ct. at 1221. This doctrine has since been modified. *See Coopers & Lybrand*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). *See also Gulfstream Aerospace Corp. v. Mayacamas Corp.,* —— U.S. at ——, 108 S.Ct. at 1136–37; *Firestone Tire & Rubber Co. v. Risjord,*

---

7. In a footnote, the former Fifth Circuit noted as dicta that an order compelling arbitration is final and appealable under § 1291. *See Coastal Indus., Inc. v. Automatic Steam Prods. Corp.,* 654 F.2d 375, 377 n. 1 (5th Cir.1981). However, our Court has interpreted *Coastal Industries* as discussing § 4 motions which disposed of all the underlying claims. *See Miller,* 791 F.2d at 852–53 (citing *Coastal Industries, Inc.*).

8. As additional support to its argument that not all of the claims were covered, AMS points out that OI does not appeal the denial of its § 4 motion against RAM. However, as we noted in note 3, OI and RAM are already arbitrating their disputes under the arbitration provision of the Management Agreement such that OI's motion against RAM is moot.

9. While our Court will find § 1291 jurisdiction of a district court order so long as all of the claims are disposed of by the § 4 motion, other circuits have more strictly construed the policy against piecemeal litigation. These courts have held that an order granting or denying a § 4 motion is not final if the motion is filed in a *pending* action. *See Langley v. Colonial Leasing Co. of New England,* 707 F.2d 1, 5 (1st Cir.1983) (stating "we are persuaded that, in the long run, a narrower approach to appealability in Section 4 cases will best serve those ends of judicial economy and speedy dispute resolution that underlie both the arbitration act and the statutes on appellate jurisdiction"); *Hartford Fin. Sys. v. Florida Software Servs.,* 712 F.2d 724, 729 (1st Cir.1983); *Matterhorn, Inc. v. NCR Corp.,* 763 F.2d 866, 870–71 (7th Cir.1985).

449 U.S. 368, 375, 101 U.S. 669, 674, 66 L.Ed.2d 571 (1981). An order may be appealable if it: (1.) conclusively determines the issue in dispute; (2.) resolves an important issue completely separate from the merits; and (3.) is "effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. at 468, 98 S.Ct. at 2458. *See also Gulfstream Aerospace Corp.,* —U.S. at ——, 108 S.Ct. at 1136–37. We need not consider the first two prongs because the third prong is clearly not satisfied by the case at hand.

An erroneous denial of arbitration in this case may be reversed on appeal from the final judgment of the underlying claim, and remanded for arbitration. *See Langley v. Colonial Leasing Co.,* 707 F.2d 1, 4 (1st Cir.1983). To deny § 1291 jurisdiction here would " 'avoid[ ] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment.' " *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. at 374, 101 S.Ct. at 673 (quoting *Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940)). We are thus precluded from reviewing OI's appeal under the collateral-order exception.

## IV

■ Finally, Omaha Indemnity contends that we have jurisdiction of this appeal under § 1292(a)(1). Section 1292(a)(1) grants this court jurisdiction for orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). Formerly, orders to compel arbitration could be appealable as injunctions under the *Enelow–Ettelson* doctrine. *See Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *Ettelson v. Metropolitan Life Ins. Co.,* 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942). This rule held that orders granting or denying stays of "legal" proceedings on "equitable" grounds could be appealable. However, this much criticized doctrine has

since been overruled by *Gulfstream Aerospace,* such that § 1292(a)(1) only provides jurisdiction over "orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have 'serious, perhaps irreparable, consequence.' " *Gulfstream Aerospace,* —U.S. at ——, 108 S.Ct. at 1142–43 (quoting *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981)).

OI argues that the district court's order denying its motion to compel arbitration has the practical effect of a mandatory injunction. OI cites *Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), to support its position. There, the Supreme Court described such an order as a "mandatory injunction" when elaborating on its decision in *Textile Workers Union v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). In *Lincoln Mills,* the union had sued its employer under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for failure to arbitrate their grievances according to the terms of their collective bargaining agreement. Jurisdiction was asserted under § 301, which provides federal jurisdiction over disagreements concerning alleged violations of contracts between unions and their employers. The parties' dispute focused on whether judicial enforcement of the union's request to compel arbitration violated the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.* While any court order directing the parties to take a specific action may have the effect of enjoining them from further proceedings in court, whether such an order constitutes an injunction for the jurisdictional purposes of § 1292(a)(1) is a different matter. In *Lincoln Mills* and in *Sinclair Refining Co.,* the Supreme Court did not address this aspect of such an order.

Many courts have concluded that an order to compel arbitration is not an injunction under § 1292(a)(1). *See, e.g., Hartford Fin. Sys., Inc.,* 712 F.2d at 729; *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 85 (2d Cir.1961) (Friendly, J.), *cert. denied sub nom. Dawson v. Lum-*

*mus Co.,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); *John Thompson Beacon Windows, Ltd. v. Ferro, Inc.,* 232 F.2d 366, 369 (D.C.Cir.1956). More importantly, this Court has implicitly adopted such a stance. In *Miller,* we stated that "[a]n order compelling arbitration has the obvious practical effect of enjoining any further judicial proceedings on the arbitrable claims, regardless of whether non-arbitrable claims are also stayed. Yet, the practical effect of an injunction is not always enough to satisfy § 1292(a)(1), for *any* order compelling an action functions as a mandatory injunction." 791 F.2d at 853 (emphasis added). We granted § 1292(a)(1) jurisdiction in that case solely because such an order was considered an injunction for *Enelow-Ettelson* purposes.

In *Gulfstream Aerospace,* the Supreme Court noted that the *Enelow-Ettelson* rule required the underlying action to be one at law, while the order had to arise from an equitable defense or counterclaim. If either condition was not satisfied, the order was not appealable under § 1292(a)(1) pursuant to *Enelow-Ettelson. Gulfstream Aerospace,* —U.S. at ——, 108 S.Ct. at 1139. It seems obvious that if orders granting or denying motions to compel arbitration were *per se* appealable as injunctions under § 1292(a)(1), it would have been unnecessary for the courts to go through the gyrations prescribed by the now defunct *Enelow-Ettelson* doctrine in order to assert jurisdiction.

Moreover, *Gulfstream Aerospace* not only requires that an order have the practical effect of an injunction, but also that it have "serious, perhaps irreparable" consequences. —U.S. at ——, 108 S.Ct. at 1143. This requirement harkens back to the longstanding policy against piecemeal review. *See Carson v. American Brands, Inc.,* 450 U.S. at 84, 101 S.Ct. at 997. As the Supreme Court elucidated in *Carson,* "§ 1292(a)(1) was intended to carve out only a *limited* exception to the final-judgment rule." *Id.* at 84, 101 S.Ct. at 996 (emphasis added). "[R]igid application of [the finality requirement of § 1291 was found to create undue hardship in some cases," *id.* at 83, 101 S.Ct. at 996, thereby compelling Congress to create certain exceptions where otherwise irreparable harm to the litigants would result. *See, e.g., Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978).

OI alleges that because the Arbitration Act is premised on a policy favoring expeditious resolution of disputes without the delay or expense of litigation, denying immediate appeal here will have irreparable consequences. As we noted in our earlier discussion of the collateral-order exception, OI may still attain review of the district court's order after final judgment has been rendered. If relief may be obtained upon review after trial, the parties are not considered to have suffered irreparable consequences. *See, e.g., Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. at 482, 98 S.Ct. at 2454 (finding that petitioner's motion for class certification in Title VII suit did not have "direct or irreparable impact" which required § 1292(a)(1) review because denial could be effectively reviewed on appeal from final judgment); *Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc.,* 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966) (denying jurisdiction under § 1292(a)(1) because permanent injunctive relief could be obtained after trial such that no irreparable consequences mandated immediate review). *See also Carson v. American Brands, Inc.,* 450 U.S. at 84–86, 101 S.Ct. 997 (elucidating what constitutes a serious, irreparable consequence). We should deny immediate appeal here precisely because we seek to avoid protracted litigation.

## V

Therefore, we dismiss this appeal for lack of appellate jurisdiction.

DISMISSED.